**IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
MONTGOMERY DIVISION**

**Charles Greenway,**

        **Plaintiff(s),**

**v.**                                **Case No.:**

**Alabama Department of
Corrections, John Hamm, Reosha**     **JURY TRIAL DEMANDED**
**Butler, Antonio McClain, Rolanda
Calloway, Pryor (FNU) and Smith
(FNU) in their individual capacities,**

        **Defendant (s).**

## COMPLAINT

Plaintiff Charles Greenway brings this complaint against the Alabama Department of Corrections, ADOC Commissioner John Hamm, Easterling Warden Reosha Butler, Bullock Warden Antonio McClain, Kilby Warden Rolanda Calloway, Capt. Pryor (FNU), and Lt. Smith (FNU) for deprivation of his civil rights under the United States Constitution.

Specifically, after being transferred to Easterling Correctional Facility in 2023, Mr. Greenway was raped by two inmates who infected him with HIV and genital warts. He was beaten multiple times by other inmates, including his rapist, then stabbed, leading finally to his placement in protective custody. Before Mr. Greenway was transferred out of Easterling, staff placed him in a room, handcuffed, with his rapist, who was not handcuffed.

1

When Mr. Greenway refused to sign a waiver of liability agreeing to placement in the general population, he was finally transferred to Bullock. However, Mr. Greenway's nightmare did not end when he left Easterling.

Because of the widespread smuggling of contraband into ADOC facilities, Mr. Greenway's rapist, Cook, (like most ADOC inmates) had a cellphone. In retaliation against Greenway for "snitching," Cook put out a hit on Mr. Greenway, so that when he arrived at Bullock, he was beaten severely and his mother was extorted over a period of months for a total of $5,000 in exchange for Mr. Greenway's life.

Mr. Greenway's experience in ADOC custody is by no means unique. Because of the widespread availability of cell phones, the unfettered control of gangs within ADOC prisons, and the systemic deliberate indifference and collaboration of ADOC officers and officials, prisoner complaints across the state demonstrate the same fact scenarios again and again. Gang members run extortion skits throughout ADOC to squeeze money out of inmates' families in exchange for their lives. Gang members kidnap, rape, and "trade" inmates for sex, infecting them with diseases that the victims will carry with them for the rest of their lives. Gang members put out "hits" on inmates who dare to report assaults, murders, or extortion, and these hits follow inmates from prison to prison because of the widespread availability of cell phones within the prison.

In turn, prison officials refuse to investigate or report acts of inmate-on-inmate violence. Prison officials smuggle contraband, including drugs, cellphones, and weapons into the prisons, allowing the powerful gangs within the prison system to thrive, and even work with the gangs to extort the families of inmates.

Mr. Greenway was released from ADOC custody with two permanent STDs, permanent injuries from stab wounds and beatings, and severe mental trauma from the rapes, assaults, and death threats he faced in the facility. Despite everything he has endured, and because of the well-known horrors of the Alabama prison system, he considers himself lucky to be alive. He now brings this Complaint to vindicate the violations of his Constitutional rights that he suffered in ADOC custody.

## I.    JURISDICTION

1.    The federal claims in this action arise under the United States Constitution's First Amendment, the Eighth and Fourteenth Amendments' prohibition against Cruel and Unusual Punishment, and the Fourteenth Amendment for procedural due process and is brought pursuant to 42 U.S.C. §1983 and Alabama State Law negligence and outrage claims.

2.    This Court has subject matter jurisdiction over this action under 29 U.S.C. §§ 1331 and 1343, as well as any claims seeking declaratory, injunctive, and monetary relief pursuant to 28 U.S.C. §§2201 and 2202, and Rules 57 and 65 of the

Federal Rules of Civil Procedure. This Court has authority to award costs and attorneys' fees under 42 U.S.C. §1988.

3.      Venue is proper in this District pursuant to 28 U.S.C. §1391(b)(1) and (b)(2). A substantial part of the events and omissions giving rise to the claim in this action occurred in this district.

4.      All claims in this action are timely filed within 2 years of the injuries incurred.

## II.   PARTIES

5.      Mr. Charles Greenway is a citizen of the State of Alabama and, at all times relevant to this Complaint, was a person incarcerated by the Alabama Department of Corrections ("ADOC").

6.      Each of the defendants listed below acted under the color of law and within the scope of their employment when engaging in the misconduct described herein.

7.      Each of the Defendants listed below is above the age of majority.

8.      Defendant John Hamm was the Commissioner of the Alabama Department of Corrections at all times relevant to this complaint.

9.      Defendant Reosha Butler was the Warden at Easterling Correctional Facility during the events described in the complaint. As warden, she was

responsible for the day-to-day operations of the prison, the safety and security of all prisoners, and the supervision of subordinate employees.

10.   Defendant Rolanda Calloway was the Warden at Kilby Correctional Facility during the events described in the complaint. As warden, she was responsible for the day-to-day operations of the prison, the safety and security of all prisoners, and the supervision of subordinate employees.

11.   Defendant Antonio McClain was the Warden at Bullock Correctional Facility during the events described in the complaint. As warden, he was responsible for the day-to-day operations of the prison, the safety and security of all prisoners, and the supervision of subordinate employees.

12.   Defendant Pryor was a Captain at Easterling Correctional Facility. As a CO, he was responsible for the day-to-day operations of the area assigned to his supervision and the supervision of all subordinate employees.

13.   Defendant Lt. Smith was a Corrections Officer at Easterling Correctional Facility. As a CO, he was responsible for the safety and security of the inmates at Easterling and for monitoring and supervising the prisoners.

### III.  FACTS

#### A. BACKGROUND

14.    Mr. Greenway has never been charged with any sex offenses and is not a sex offender.

15.    At the time he entered ADOC custody, Mr. Greenway did not have HIV or genital warts.

#### B. CONDITIONS IN ALABAMA'S PRISONS

16.    The dangerous conditions in Alabama's prisons are well known to the wardens of Kilby, Easterling, and, Bullock and Hamm.

17.    On April 19, 2019, The Department of Justice issued a report of its investigation into the conditions in Alabama's Prisons.

18.    The report indicated that the Department of Justice believed that there was reasonable cause to believe that the conditions in Easterling, Bullock, and Kilby Correctional Centers violated the United States Constitution.

19.    The report also noted that the Alabama Department of Corrections often failed to protect inmates from violence even when they were previously warned of threats to the inmate's safety.

20.    The Department of Justice's report also noted that "[d]angerous and illegal drugs are highly prevalent in Alabama's prisons, and ADOC appears unable or unwilling to prevent the introduction and presence of drugs in its prisons."

21.    The Department of Justice Report noted that staff were not being adequately screened for drugs and were introducing illegal substances into the Alabama prison system.

22.    Despite being apprised of these conditions, Defendants Hamm and the wardens of Kilby, Easterling, and Bullock took no actions to remedy the conditions in Fountain.

### C. COMMERCE WITHIN THE GANGS THRIVES IN ADOC FACILITIES, INCLUDING BULLOCK, KILBY, AND EASTERLING, AS STAFF ENABLE THE PRISONERS TO BUY AND SELL CONTRABAND AND RUN SCAMS

23.    Internet "cash-out" apps are commonly used in ADOC prisons to buy and sell.

24.    Instant money transfers enable large volumes of economic exchange, enriching and strengthening the power of the gangs at Fountain and throughout the state's prison system.

25.    Kilby, Bullock, and Easterling staff make only nominal efforts to seize cell phones from inmates.

26.    In fact, COs at Kilby, Easterling, and Bullock frequently comport themselves like gang members, ingratiating themselves with the top gang leaders, and running cell phone skits with them.

27.    A typical example of such a skit would involve targeting a prisoner who was seen as weak but having access to money.

28.    In such a skit, a gang member will offer the victim a free call. While the inmate was on the phone, a guard would walk toward them and seize the phone from the inmate.

29.    Because the guard took the gang member's phone, the gang members will then insist that the victim of the skit had to pay to replace the phone.

30.    The conspiring officer would give the phone back to the gang member later, and the two then split the money paid by the victim.

31.    Upon information and belief, the wardens of Kilby, Easterling, and Bullock and other administrative staff at Kilby, Easterling, and Bullock knew about these skits and did nothing to stop them.

32.    Inmates victimized by such skits who were unable to pay have been severely beaten, stabbed, or otherwise violently injured on many occasions throughout the Alabama prison system.

33.    Corrections officers at Easterling have been caught smuggling drugs and paraphernalia into the prison, such as Quindarius Thagard, who was arrested in 2023 for bringing in illegal items including 32 cellphones in exchange for $10,000.

34.    Corrections officers and staff at Bullock have been caught smuggling drugs and paraphernalia into the prison, such as the contract employee Desiree Wells, who was caught attempting to smuggle 1 gram of methamphetamine, 30 grams of marijuana, and 5 grams of cocaine into Bullock Correctional Facility.

35.    Corrections officers at Kilby have been caught smuggling drugs and paraphernalia into the prison, such as Tyree Hoyle, who was charged with attempting to smuggle marijuana, suboxone, and a cell phone into the Kilby Correctional Facility.

36.    Top-level prison administrators, such as the wardens of Kilby, Easterling, and Bullock were deliberately indifferent to the injuries caused by such skits and their management practices and policies.

### D.  MR. GREENWAY IS RAPED AT EASTERLING, LEADING TO HIM CONTRACTING GENITAL WARTS AND HIV

37.    Around July of 2023, ADOC transferred Mr. Greenway to the Easterling Correctional Facility in Clio, Alabama.

38.    When Mr. Greenway arrived at Easterling, he discovered that he was not going to be assigned a bed at the facility.

39.    The practice of not assigning beds to prisoners is widespread throughout the Alabama Department of Corrections.

40.    Because the prisoners are not assigned beds, they are forced to buy a bed with their commissary money or search for someone who is able to give them a bed.

41.    Mr. Greenway was assigned to a dormitory across the hall from a sex offender dormitory.

42.    However, that dormitory did not have any available beds.

43.    In looking for a place to sleep, Mr. Greenway found a person in the sex offender dormitory who told Mr. Greenway that there was a bed above him where he could stay because otherwise he would be "homeless" within the prison.

44.    There, inmate Tommy Cook raped Mr. Greenway.

45.    Another inmate known as "Killer T" raped Mr. Greenway on the same day as well.

46.    Around December of 2023, while still at Easterling, Mr. Greenway began having severe flu-like symptoms.

47.    Mr. Greenway first assumed that he had a cold or a flu.

48.    Mr. Greenway started losing weight.

49.    Mr. Greenway was exhausted and needed to lie down in his bed 10 times a day.

50.    However, when he reported to medical staff at YesCare, Mr. Greenway discovered that he had contracted HIV.

51.    At first, Mr. Greenway was too embarrassed to tell medical staff that Cook and Killer T had raped him and infected him with HIV.

52.    Mr. Greenway would later learn that Cook and Killer T had also infected him with genital warts.

53.    After the rapes, Mr. Greenway moved out of the bed in the sex offender dorm and was "homeless" within Easterling.

### E.  MR. GREENWAY IS STABBED AT EASTERLING AND REPORTS BOTH THE STABBING AND THE RAPES.

54.    Around 3-4 months later, Mr. Greenway was standing out in the middle of the yard at Easterling, holding a six-pack of drinks over his shoulder.

55.    Another inmate ran up to Mr. Greenway and stabbed him three times – twice in his left arm and once in his right arm—with an ice pick and took the drinks from him.

56.    Mr. Greenway learned quickly at ADOC that when he reported incidents of violence to Corrections Officers, no action would be taken on those complaints.

57.    In fact, reports of violence were far more likely to result in retributive violence from other inmates for "snitching."

58.    As a result, Mr. Greenway was initially reluctant to report the stabbing.

59.    However, around five days after the stabbing, Mr. Greenway's wounds continued to get worse.

60.    As a result, he went to a CO to report that he had been stabbed.

61.    In response to Mr. Greenway's report, the CO on duty said, "I'm about to get off work. I don't want to do the report on that."

62.    Another inmate, Anthony Orsag, witnessed the stabbing.

63.    Because the CO refused to take a report of the stabbing, Mr. Greenway went to his assigned Mental Health worker, Ms. FNU Chapman in the facility for help.

64.    Ms. Chapman provided Mr. Greenway with bandages for his stab wounds.

65.    Ms. Chapman then took a report on the stabbing incident.

66.    She also asked Mr. Greenway to describe everything that had happened to him.

67.    This prompted Mr. Greenway to confide in Ms. Chapman that he had also been raped by Cook and another inmate on the same day.

68.    In response, Ms. Chapman drafted a Prison Rape Elimination Act ("PREA") complaint about the rapes.

### F. MR. GREENWAY IS PLACED IN PROTECTIVE CUSTODY, WHERE HE IS PLACED IN A ROOM, HANDCUFFED, WITH HIS RAPIST.

69.    After that, Mr. Greenway was placed in protective custody for his last 4 weeks at Easterling.

70.    Easterling officials asked Mr. Greenway to sign a liability waiver to be released back into the general population.

71.    Mr. Greenway refused to sign the waiver out of fear for his safety in the general population.

72.    ADOC then decided to transfer Mr. Greenway to Bullock Correctional Facility.

73.    Before Mr. Greenway could be transferred, however, and *while he was in protective custody,* COs at Easterling placed Mr. Greenway, shackled, in a room with his rapist, Cook.

74.    Cook was not handcuffed.

75.    Mr. Greenway had at this point already reported the rape and Easterling officials knew or should have known that Cook was a threat to Mr. Greenway's safety.

76.    When Mr. Greenway reported the fact that he had been placed, handcuffed, in a room with Cook able to roam freely, to Captain FNU Pryor, Pryor only said, "Well, but did he hurt you?"

77.    After the PREA complaint was filed, Mr. Greenway did tell his medical providers at the prison that the men who raped him in the prison had infected him with HIV.

### G. ADOC TRANSFERS MR. GREENWAY TO BULLOCK, WHERE HE IS BEATEN AND HIS MOTHER IS EXTORTED

78.    Mr. Greenway was subsequently transferred to Bullock Correctional Facility ("Bullock").

79.    There, ADOC once again assigned him to a dormitory, but not to a bed.

80.    As a result, Mr. Greenway had to "buy" a bed for $25.

81.    In his first week at Bullock, three men jumped on him and beat him up.

82.    Mr. Greenway reported the assault to Lieutenant FNU Smith, who was on duty.

83.    Instead of putting Mr. Greenway in protective custody, however, he was simply moved to another dorm.

84.    Mr. Greenway was once again not assigned a bed and had to buy one for $25.

85.    This left Mr. Greenway vulnerable to retribution for making a report.

86.    No CO or staff member at Bullock pulled the video footage from the camera at Bullock that recorded the assault on Mr. Greenway.

87.    After that, an inmate known as "Hammer" and a group of extortionists working with him approached Mr. Greenway and told him that he owed him $800 and that he would hurt Mr. Greenway if the amount was not paid.

88.    Mr. Greenway was forced to contact his mother, who paid the $800 to ensure his safety.

89.    "Hammer" and his associates continued to extort Mr. Greenway until his mother had paid around $5,000 to keep him safe before he finally left Bullock Correctional Center.

90.    Fellow prisoners assaulted Mr. Greenway at least 10 times while he was in ADOC custody at Easterling and Bullock.

91.    Mr. Greenway was also assaulted at Kilby Correctional Facility on multiple occasions.

### H. SUPERVISORY DEFENDANTS (WARDENS) FAILED TO PROVIDE ADEQUATE SUPERVISION AND MONITORING

92.    Supervisory Defendants Hamm, Butler, McClain, and Calloway through their acts and omissions failed to provide adequate supervision and

monitoring of prisoners housed within Easterling, Kilby, and Bullock to prevent violence.

93.    Most of the time a single cube officer was the only officer monitoring an entire housing dormitory.

94.    The cube officers generally did not leave their cubicles.

95.    Oftentimes, cube officers had not even undergone basic correctional officer training.

96.    The officers in the cubes were at times absent, asleep, on the telephone, or otherwise not paying attention to the prisoners they were charged with monitoring.

97.    Random patrols of the dorms by additional officers occurred extremely infrequently.

98.    The housing dorms also lacked adequate surveillance cameras to monitor the housing units.

99.    Blind spots in the housing dorms, in concert with inadequate staff presence, officer inattentiveness, and the lack of surveillance equipment created a further substantial risk of serious harm to prisoners such as Plaintiff and contributed to numerous violent incidents in the years leading up to the sexual and physical assaults of Plaintiff.

100.  Due to lax supervision, security staff at Kilby, Easterling, and Bullock sometimes watched violence or troubling incidents unfold without intervening.

101.  Due to lax supervision, security staff at Kilby, Easterling, and Bullock often failed to observe violent incidents and only discovered the victim after the violence and/or injuries had occurred.

102.  Due to lax supervision, security staff at Kilby, Easterling, and Bullock failed to control the movement of prisoners between housing units, increasing the risk and frequency of violent incidents.

103.  Further, due to lax supervision, security staff at Bibb often failed to timely respond to prisoners who had been seriously injured in violent incidents, causing critical delays in the treatment of serious injuries.

104.  When Plaintiff was sexually assaulted at Easterling around the fall of 2023, only a cube officer was present outside of the housing unit. The officer had no line of sight into the area housing dorm where Plaintiff was assaulted.

105.  Supervisory defendants Hamm, Butler, McClain, and Calloway were aware that the inadequate supervision and monitoring of prisoners at Kilby, Easterling, and Bullock created a substantial risk of serious harm that facilitated and encouraged sexual abuse and assaults such as that suffered by Plaintiff.

106.  Despite this, defendants Hamm, Butler, McClain, and Calloway failed to improve supervision, monitoring, and control of movement of prisoners at Kilby,

Easterling, and Bullock, and failed to train and discipline subordinates whose misconduct contributed to the lack of supervision and monitoring in the housing dorms.

## IV.    CAUSES OF ACTION

**Count One.**        **42 U.S.C. § 1983 – Eighth Amendment—Excessive Risk of Physical and Sexual Assault**

*(Against Defendants Butler and Pryor in their individual capacities)*

107.   The plaintiff realleges and reincorporates each of the previous paragraphs as if fully set out herein.

108.   Pursuant to the Eighth Amendment of the United States Constitution, Plaintiff was entitled to be free from a substantial risk of serious harm while in the custody of the state.

109.    Defendants acted with deliberate indifference to the excessive risk of physical and sexual assault faced by Mr. Greenway while in their custody, in violation of his Eighth Amendment rights.

110.   Defendants were aware of the widespread history of sexual violence at Easterling and the substantial risk of harm facing prisoners such as Plaintiff.

111.   Defendant Butler failed to take steps to ensure that threats or incidents of violence were adequately addressed and that vulnerable prisoners were separated from prisoners likely to commit violence, despite her responsibility to do so.

112.   Defendant Butler failed to take steps to ensure that prisoners at Easterling were adequately supervised and monitored, despite her responsibility to do so, perpetuated policies and customs of leaving housing units unsupervised, and failed to train and discipline subordinates who perpetuated those policies and customs.

113.   Defendant Pryor failed to take steps to ensure that Plaintiff was not placed in harm's way by placing Plaintiff in a secluded room, handcuffed, with his rapist.

114.   The misconduct of Defendants described in this action was undertaken with deliberate indifference, malice, willfulness, and/or reckless indifference to the rights of prisoners such as Plaintiff, and was objectively unreasonable.

115.   Defendants' misconduct directly and proximately caused Plaintiff to be subjected to a substantial risk of serious harm and to suffer horrific physical and emotional injuries.

**Count Two.**     **42 U.S.C. § 1983 –Eighth Amendment—Excessive Risk of Physical and Sexual Assault**

*(Against Defendants Hamm, Calloway, McClain, and Butler in their*

*individual capacities)*

116.  The plaintiff realleges and reincorporates each of the previous paragraphs as if fully set out herein.

117.  Pursuant to the Eighth Amendment of the United States Constitution, Plaintiff was entitled to be free from a substantial risk of serious harm while in the custody of the state.

118.  Defendants Hamm, Butler, Calloway, and McClain consciously disregarded the substantial risk that Plaintiff would be seriously harmed in Easterling, Kilby, and Bullock, failing to protect him from harm.

119.  Defendants were aware of the widespread history of violence at Easterling, Kilby, and Bullock and the substantial risk of serious harm facing prisoners such as Plaintiff.

120.  Defendants failed to take steps to ensure that threats or incidents of violence were adequately addressed and that vulnerable prisoners were separated from prisoners likely to commit violence, despite their responsibility to do so; perpetuated policies and customs of ignoring complaints of violence, as well as housing vulnerable prisoners alongside prisoners with a history of violence; and

failed to train and discipline subordinates who perpetuated those policies and customs.

121.  Defendants failed to take steps to ensure that prisoners at Easterling, Kilby, and Bullock were adequately supervised and monitored, despite their responsibility to do so, perpetuated policies and customs of leaving housing units unsupervised, and failed to train and discipline subordinates who perpetuated those policies and customs.

122.  The misconduct described in this cause of action was undertaken with deliberate indifference, malice, willfulness, and/or reckless indifference to the rights of prisoners such as Plaintiff, and was objectively unreasonable.

123.  Defendants' misconduct directly and proximately caused Plaintiff to be subjected to a substantial risk of serious harm and to suffer horrific physical and emotional injuries.

## Count Three.        State Law Negligence—Breach of Duty to Provide Safety from Assault

*(Against Defendants Hamm, Butler, Calloway, McClain, Smith, and Pryor in their individual capacities)*

124.  The plaintiff realleges and reincorporates each of the previous paragraphs as if fully set out herein.

125.  In violation of Alabama Law, Defendants Hamm, Butler, Calloway, McClain, Smith, and Pryor are liable for negligence and breach of their duty to protect prisoners in their custody.

126.  Defendants each had a legal duty under federal and state law to provide for reasonable safety of inmates, including prevention of violence.

127.  Defendant Hamm breached his duty by failing to ensure that the facilities under his supervision were taking steps to ensure that threats and incidents of violence were adequately addressed and that vulnerable prisoners were separated from prisoners likely to commit violence.

128.  Defendants Butler, McClain and Calloway breached their duties by failing to ensure that sufficient officers were supervising and monitoring the inmates, and by failing to take steps to ensure that threats or incidents of violence were adequately addressed, including by sanctioning policies and customs of ignoring complaints of violence.

129.  Defendants Smith and Pryor breached their duties by failing to observe and monitor inmates under their supervision, failing to address threats or incidents of violence, and ignoring complaints of violence.

130.  Defendants' breach of their duty proximately caused the physical and sexual assaults on Plaintiff as well as the extortion and threats of violence towards Plaintiff.

131. Immunity is unavailable for Defendants because they each acted willfully, maliciously, fraudulently, or in bad faith.

132. Immunity is also unavailable for Defendants because their conduct violated the U.S. Constitution, the Alabama Constitution, and applicable laws and regulations.

## Count Four.        State Law Outrage of Intentional Infliction of Emotional Distress

*(Against Defendants Hamm, Butler, Calloway, McClain, Smith, and Pryor in their individual capacities)*

133. In violation of Alabama Law, Defendants Hamm, Butler, Calloway, McClain, Smith, and Pryor intentionally inflicted severe emotional distress on Plaintiff.

134. Immunity is unavailable for Defendants because they each acted willfully, maliciously, fraudulently, or in bad faith.

135. Immunity is also unavailable for Defendants because their conduct violated the U.S. Constitution, the Alabama Constitution, and applicable laws and regulations.

## V.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

A.        An award of compensatory damages, including all appropriate pre- and post-judgment interest, in an amount to be determined that would adequately compensate for their injuries caused by the conduct of the Defendants alleged herein (as well as the cost of treating those injuries), including, but not limited to: physical harm, emotional distress, pain and suffering, embarrassment, and feelings of unjust treatment.

B.        An award of punitive damages in an amount to be determined for the intentional and reckless conduct alleged herein that would effectively deter the Defendants and others similarly situated from engaging in similar behavior in the future;

C.        An award of costs and reasonable attorneys' fees in this action under 42 U.S.C. §§ 1983, 1988, and 12205; and 29 U.S.C. § 794a;

D.        Trial by struck jury;

E.        Appropriate injunctive relief; and

F.        Such other relief as this Court deems just and proper.

*/s/Kira Fonteneau*
Kira Fonteneau

OF COUNSEL:
The Workers Firm LLC
2 North 20th St, Suite 900
Birmingham, AL 35203
T. 404.382.9660 F. 205.651.4130

**PlAINTIFF DEMANDS TRIAL BY STRUCK JURY**

**PLEASE SERVE DEFENDANT AS FOLLOWS:**

Alabama Department of Corrections
223 Sasser Drive
Hamilton, AL 35570
Attorney General's Office of Alabama

_/s/Kira Fonteneau_
Kira Fonteneau